UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV265-V

| Lisa Miceli, | ) | |
| :--- | :--- | :--- |
| Plaintiff, | ) | |
| | ) | **Memorandum and Order** |
| v. | ) | |
| | ) | |
| KBRG of Statesville, LLC, & | ) | |
| KBRG Holdings, Inc., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Defendant KBRG Holdings, Inc.'s Motion for Summary Judgment and all related memoranda and exhibits. (Document #69)

### I. Factual and Procedural Background

On October 19, 2005, Plaintiff Lisa Miceli ("Miceli") filed this action against her former employer KBRG of Statesville, LLC ("KBRG Statesville" or "the LLC") for claims arising from her employment as a model home and sales office "hostess" at two KBRG Statesville residential developments. The gist of Miceli's suit is that she was fired in retaliation for her decision to report what she perceived to be unlawful discrimination based upon gender or pregnancy. Plaintiff's claims allege wrongful termination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a); the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); the North Carolina Employment Practices Act, N.C. Gen. Stat. § 143-422.2; the Fair Labor Standards Act, 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1; and state law claims for breach of contract and wrongful discharge in violation of public policy.

1

Plaintiff filed her First Amended Complaint prior to the Defendant's Answer on July 13, 2006. (Document #10). The LLC answered the First Amended Complaint on August 29, 2006, but neglected to file a Corporate Disclosure Statement along with its Answer in violation of Local Civil Rule 7.1. Less than thirty (30) days after filing its Answer, KBRG Statesville began the dissolution process. On September 15, 2006, the LLC's dissolution became effective with the North Carolina Secretary of State's Office. The LLC failed to notify the Court or Plaintiff Miceli about KBRG Statesville's dissolution status. The LLC left no successor in interest.

Some nine (9) months later, in June 2007, and in the midst of the initial discovery period, Miceli's counsel inadvertently learned of KBRG Statesville's dissolution in conjunction with work associated with another matter.[1] On July 25, 2007, almost a year after beginning the dissolution process, the LLC filed its Amended Corporate Disclosure Statement identifying its *sole* member as KBRG Holdings. (Document #20)

On August 1, 2007, Plaintiff moved to amend her complaint, and join KBRG Holdings, Inc. ("KBRG Holdings") as a Defendant. (Document #24). On August 20, 2007, the magistrate judge granted Plaintiff's Motion to Amend and opined that the naming of KBRG Holdings as a defendant would properly relate back to the date of the original complaint's filing. (Document #31 / J. Howell Order at 6) The magistrate judge essentially found that, based on the record before him at the time, the two entities had "such an identity of interest ... that the actual knowledge of one should be imputed to the other." (Id.) Defendants appealed (objected) to the magistrate judge's ruling. *See* FED. R. CIV. P. 72(a).

---

[1] Miceli claims that Defendant KBRG Holdings intentionally concealed its relationship with the LLC.

In resolving Defendant's objection, this Court found that KBRG Statesville's existence did not end for all purposes at its dissolution. The undersigned looked to nearly identical language found in the Business Corporations Act ("BCA") as permitting a corporation to defend a lawsuit after dissolution. *Compare* N.C. Gen. Stat. § 57C-6-04(c) (an LLC's dissolution *does not* "...abate or suspend a proceeding by or against the limited liability company in its own name.") *with* N.C. Gen. Stat. § 55-14-05(b)(6) ( "[D]issolution does not...abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution."). Relying on legal authorities interpreting the BCA's language, the Court determined that dissolution did not deprive KBRG Statesville of standing to defend the instant lawsuit or compel dismissal.[2] In light of the Court's ruling, and the inclusion of KBRG Holdings as a party, additional discovery was permitted and the attendant deadlines adjusted.

The Court now considers whether Plaintiff may proceed with her lawsuit, namely, the effort to recover from KBRG Holdings based upon the defunct LLC's actions. For the reasons stated herein, summary judgment is inappropriate.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). A genuine

---

[2] Well before the Plaintiff or the Court knew of KBRG Statesville's dissolution, KBRG Holdings, KRBG Statesville, or both, actively defended the LLC in this lawsuit. As explained, *supra*, KBRG Holdings' participation in these proceedings since the LLC's dissolution is consistent with its member-manager designation.

issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50. Moreover, when the movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *See* Anderson, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990); Cole v. Cole, 633 F.2d 1083 (4th Cir.1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### III. Analysis

KBRG Holdings seeks summary judgment dismissal based on its contention that KBRG Holdings operated entirely independently of KBRG Statesville such that Miceli cannot recover from the parent entity on a piercing the corporate veil theory. It is unclear from Defendant's brief whether KBRG Holdings is also advancing a jurisdictional argument (*i.e.*, failure to exhaust administrative remedies) since KBRG Holdings was not identified or named in the EEOC charge submitted by Miceli.[3] In any event, the requisite analyses overlap and thus provide an

---

[3] Miceli contends that this legal issue has already been resolved and is, therefore, the "law of the case." Although some of the same issues were touched upon by the magistrate judge's ruling, and this Court's

opportunity to briefly address both issues.

As an initial matter, because Miceli asserts violation of a federal statute, application of federal common law is appropriate.[4] *See* Thomas v. Peacock, 39 F.3d 493, 503 (4th Cir.1994) (applying federal law in ERISA action), *rev'd on other grounds*, 516 U.S. 349 (1996).

> There is no litmus test in the federal courts governing when to disregard corporate form. The Supreme Court, has, however, provided some guidance, stating that "the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice." The Court has further indicated that corporate form may not defeat overriding federal legislative policies....***The general rule adopted in the federal cases is that a corporate entity may be disregarded in the interests of public convenience, fairness and equity.*** In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form, an inquiry that usually gives ***less respect to the corporate form*** than does the strict common law alter ego doctrine.[5]

Thomas, 39 F.3d at 504 (*internal citations omitted and emphasis added*).

---

disposition of Defendants' objections thereto, this precise legal issue was not squarely addressed. For purposes of the instant analysis, knowledge of the proceedings by KBRG Holdings is not determinative and the identity of interest inquiry warrants a more detailed discussion.

[4] Under either the federal common law or North Carolina law, basic veil-piercing principles are the same. *See* Mayes v. Moore, 419 F.Supp.2d 775, 780-82 (M.D.N.C. February 16, 2006) (applying federal common law and discussing veil-piercing in context of Title VII claim); Def.'s Reply at 6 n.1.

[5] Title VII is a remedial statute. "Congress, through Title VII, wanted to end discrimination, wherever it was found." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir.2005); see also Hopkins v. Baltimore Gas and Elec.Co., 77 F.3d 745, 749-50 (4th Cir.1996) (objective of Title VII is "to strike at the entire spectrum of *disparate treatment of men and women* in employment") (*quoting* Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)). As a result, Title VII prohibits "an employer" from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000e-2(a)(1). Title VII similarly prohibits an employer from discriminating against an employee in retaliation for an employee's opposition to, or complaint about, an unlawful employment practice. 42 U.S.C.§2000e-3(a).

## A. Jurisdictional Challenge / Failure To Exhaust Administrative Remedies Against KBRG Holdings

KBRG Statesville failed to file a Corporate Disclosure Statement until 2007. Consequently, Miceli had not been put on notice by the LLC that KBRG Holdings existed and Miceli subsequently failed to name KBRG Holdings in the EEOC charge. Ordinarily, failure to name an entity within the EEOC charge would prohibit suit against the entity for failure to exhaust administrative remedies. *See* Mayes, 419 F.Supp.2d at 782 (*citing* Alvarado v. Bd. of Trs. of Montgomery Cmty. College, 848 F.2d 457, 458-59 (4th Cir.1988); 42 U.S.C. §2000e-5(f)(1)). Although the Fourth Circuit has not expressly adopted the rule as such, the Circuit has cited the "substantial-identity" exception with approval on several occasions.[6] Id. (*citing* Alvarado, 848 F.2d at 461; EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1186 n. 5 (4th Cir.1981)). The Fourth Circuit first explained in *dictum* that "[c]ourts have developed exceptions to this rule [requiring that all defendants be named in the administrative charge] ... where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process." Am. Nat'l Bank, 652 F.2d at 1186 n. 5; Efird v. Riley, 342 F.Supp.2d 413, 423 (M.D.N.C. 2004) (recognizing exception to EEOC naming rule where named and unnamed parties have substantially the same identity or have an agency relationship).

Later, in Johnson v. Flowers Indus., Inc., the Fourth Circuit considered a plaintiff's ablity to hold a parent corporation liable as the ultimate Title VII "employer" for the alleged

---

[6] The "substantial-identity" exception has been referred to by other federal district courts within the Circuit as the "single-employer" or "integrated employer" doctrine. *See* Harris v. Palmetto Tile, Inc., 835 F.Supp.263, 266 (D.S.C. October 14, 1993) (single-employer); DePaoli v. Vacation Sales Assocs., LLC, 425 F.Supp.2d 709, 714 (E.D.Va. November 4, 2005) (integrated employer).

discriminatory acts of its wholly-owned subsidiary.[7]  814 F.2d 978, 981 (4th Cir.1987) (combining jurisdictional EEOC naming issue with traditional pierce the corporate veil inquiry). The Fourth Circuit made clear in Johnson that "[t]he amount of evidence needed to establish an employment relationship depends on the relationship between [the parent and subsidiary entities]." *See* Johnson, 814 F.2d at 980; *see also*, Roberts v. Shaw Group, Inc., 2009 WL 86717 (E.D.Va. January 13, 2009).  The Court contrasted situations where a subsidiary functioned more as a "branch office" or subdivision to the parent with the relationship where a parent is the majority shareholder of the subsidiary.  Id.  The Court reviewed the rationale for limited liability and intended benefits at length and noted that veil piercing may be appropriate where "the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." Id. at 980-81 (internal citation omitted). More specifically, in the employment context, the types of circumstances identified by the Johnson panel as triggering the "substantial-identity" exception:

> (1) when one entity controls the employment practices and decisions of the other; or
> (2) when one entity dominates the operations of the other.

Johnson, 814 F.2d at 981.  The control of employment practices and decisions encompasses "the parent company hir[ing] and fir[ing] the subsidiary employees, routinely shift[ing] them between the two companies, and supervis[ing] their daily operations . . . ." Johnson, 814 F.2d at 981.  "When a subsidiary hires employees, there is a strong presumption

---

[7] For purposes of Title VII, "[t]he term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, ***and any agent of such a person*** . . . ." 42 U.S.C.§2000e(b) (*emphasis added*).  As for agency relationship, KBRG Holdings asserts that it was an agent of the LLC but that the converse was not true.

7

that the subsidiary, not the parent company, is the employer." Id. at 980.

The second (and broader) category of cases involve the domination of operations generally. For instance, circumstances where "the subsidiary may be highly integrated with the parent's business operations, as evidenced by the commingling of funds and assets, the use of the same work force and business offices for both corporations, and the severe undercapitalization of the subsidiary." Id. The parent's failure to observe basic corporate formalities such as "keeping separate books and holding separate shareholder and board meetings" was also mentioned. Id.

The Fourth Circiut emphasized:

> "The doctrine of limited liability remains the rule. The parent company is the employer only if it exercises a degree of control that *exceeds* the control normally exercised by a parent corporation."

Johnson, 814 F.2d at 980-91 (*citing* Armbruster v. Quinn, 711 F.2d 1332 (6th Cir.1983)) (*emphasis added*); *see also* Depaoli v. Vacation Sales Assocs., LLC, 425 F.Supp.2d 709, 715 (E.D.Va.. November 4, 2005) ("control of labor operations is the most critical factor in determining whether corporate entities are to be treated as an "integrated employer") (*quoting* Hukill v. Auto Care, Inc., 192 F.3d 437, 444 (4th Cir.1999).

i. **Control of Employment Practices**

KBRG Holdings claims judgment as a matter of law is appropriate given its uncontraverted evidence that Jon Perdue ("Perdue"), KBRG Statesville Sales Manager and Plaintiff's immediate supervisor, acted independently of KBRG Holdings in deciding to terminate Miceli. Regarding employment decisions, Perdue represents:

> With the involvement of *some of the LLC's management personnel, (and no involvement from Holdings)*, I was permitted and given latitude to make decision regarding the LLC's hiring and

8

> firing of its employees. I determined it was necessary to terminate
> Ms. Miceli on my own. I did not receive any direction, instruction
> and / or guidance from Holdings regarding the decision to
> terminate Ms. Miceli.

(Perdue Aff. ¶5) (*emphasis added*) Thus, Perdue references having worked with other unidentified LLC "management personnel" in reaching the decision to terminate Miceli's employment.

Doug Jones, Chief Financial Officer of KBRG Holdings, echoes Perdue's rather vague representation that KBRG Holdings played no part in KBRG Statesville's employment practices. (Jones Aff.¶7) Jones avers that KBRG Holdings never exercised any "direct" authority over the LLC's hiring decisions, including the decisions related to Plaintiff Miceli. (Jones Aff. ¶¶8,9) However, according to Miceli, her initial employment contacts, as well as her later complaints concerning compensation, went through the Richmond, Virginia office location, where it seems that KBRG Holdings and KBRG Statesville each conducted at least some part of its operations and human resources functions. Miceli testified that she met with Teresa Dowdy ("Dowdy") at the Richmond, Virginia location to discuss terms and conditions of employment with the LLC. (Miceli Dep. 71-82) Dowdy's responsibilities were described by Perdue as "to assist in operations." (Perdue Dep. 48) In addition, Miceli's initial employment contract was drafted by Kimberly Short, who also worked from the Richmond, Virginia office and was described by Perdue as "an account assistant." (Perdue Dep. 29-31.) Short was apparently a KBRG Holdings employee. (Perdue Dep. 29-31, 56) The record does not make clear whether the LLC or KBRG Holdings actually employed Dowdy but the email address suffix for Dowdy is for a "Keybuild.com" – the same as Miceli's email address. (Pl.'s Exhs.8,9)

9

One federal district court decided the same issue as a matter of law in favor of the defendant-parent entity where it was undisputed that where there was no shared management between the two entities and no evidence to support a domination of operations finding. *See* Harris v. Palmetto Tile, Inc., 835 F.Supp. 263, 267 n. 4 (D.S.C. October 14, 1993) (principles set forth within Johnson are equally valid for determining whether two business entities may be deemed to be a single employer in the context of Title VII). The court reasoned that without a common manager, neither entity could control the employment practices and decisions of the other. Harris, 835 F.Supp. at 267 n. 4. In Harris, the single-employer doctrine did not aid the former employee for purposes of plaintiff's Title VII claim where the subsidiary corporation's insurance and profit-sharing plans were administered by the parent entity, each company maintained its own separate payroll account, entities did not share office space, there was only one common employee, and each company carried a distinct line of products even though one was parent to the other. While instructive, Harris is distinguishable from the facts here in that KBRG Holdings is apparently an owner / member-manager without any function independent of KBRG Statesville. In addition, the Harris entities did not share office space or have centralized bank accounts.

Roberts v. Shaw Group, Inc. can also be distinguished given the absence of any evidence in Roberts that the parent entity had any role in the hiring and firing of the subsidiary's personnel. In Roberts, the court refused to pierce the corporate veil where, even though the parent entity paid the former employee's paychecks, the parent's name appeared on the subsidiary's letterhead, the employee handbook included a reference to the parent entity, the parent administered the benefit plan of its subsidiary, and investigation of complaints were

conducted by personnel of the parent, there was no evidence that the parent hired or fired any of the subsidiary's employees or routinely shifted employees between the two entities. 2009 WL 86717 (E.D.Va. January 13, 2009). In other words, there was no evidence the parent corporation exercised control over its subsidiary's employment practices or that the entities operated as a single entity.

  **ii. "Excessive Control" / Domination of Operations & Piercing the Corporate Veil**

The Court next considers the parties' positions relevant to both the domination of operations and piercing the corporate veil.[8] As for veil piercing, the Fourth Circuit explains:

> It is of course axiomatic that a shareholder - even if a corporation - is not responsible for the acts of the corporation. This concept of limited liability is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder. Although decisions to pierce a corporate veil, exposing those behind the corporation to liability, must be taken reluctantly and cautiously, courts will not hesitate to take such action when justice so requires. Determining when justice so requires necessitates a careful review of the circumstances of each case - ***a factual inquiry particularly within the province of the district court***.
>
> ***
>
> Whether the corporate veil should be pierced is necessarily a ***factual inquiry*** to be conducted on a case-by-case basis. Among other factors, we have identified the following as suggesting the propriety of piercing the veil: gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant

---

[8] Since the "substantial-identity" exception depends upon control or domination by the parent entity, the analysis is akin to traditional piercing the corporate veil jurisprudence. Johnson, 814 F.2d at 981 (rejecting a mechanical four-factor test in every case in favor of ultimate inquiry concerning parent domination).

11

stockholder or stockholders.

Keffer v. H.K. Porter Co., 872 F.2d 60, 64-65 (4th Cir.1989) (internal quotation marks and citations omitted); GAVCO, Inc. v. Chem-Trend Inc., 81 F.Supp.2d 633, 643 (W.D.N.C.1999) (same factors). It is well-established law that a parent entity may retain a certain amount of oversight over its subsidiary without foregoing limited liability. Johnson, 814 F.2d at 981-82. Normal incidents of ownership include things like the right to choose directors and set general policies. Id. at 980-981 (*quoting* Baker v. Raymond Int'l, Inc., 656 F.2d 173, 180 (5th Cir.1981)).

The Roberts v . Shaw Group decision, *supra*, teaches that the sharing of resources or delegation of certain functions are to be expected as "normal incidents of ownership." As already discussed, no excessive control was found in Roberts despite the delegation of certain administrative tasks to the parent entity (*e.g.*, administration of the subsidiary's benefit plan, payroll responsibilities). 2009 WL 86717 (E.D.Va. January 13, 2009). Significantly, in Roberts, all three entities, although related (one parent and two subsidiaries), had an independent function or role within the overall business operation aside from "holding" stock.[9]

KBRG Holdings has consistently maintained its position as a separate and independent "holding" company for KBRG Statesville. KBRG Holdings asserts that all corporate formalities were maintained, that Holdings had no role in the LLC's hiring or other business decisions, and that each entity kept its own books and records despite having a centralized bank account. (Jones Aff. ¶7) The circumstances and timing are suspect nonetheless.

---

[9] As in Harris v. Palmetto Tile, where the parent and subsidiary entities each carried a distinct line of products, the actual purpose or function of the respective entities is key to the analysis.

KBRG Holdings is identified as the LLC's *sole* "manager-member."[10] LLC membership is comparable to being a shareholder while managing is comparable to serving as a director for a professional corporation. *See* N.C.Gen.Stat. §57C-2-01(c).[11] In the case of a member-managed LLC, members also have the rights of managers. Id., §34.04[1]. As the *sole* "member-manager" of the LLC, the KBRG Holdings entity had *sole* responsibility for the LLC's management. According to Miceli, "as managing member, KBRG Holdings[] must have controlled and directed Statesville's activities because there was no one else to do so." (Pl.'s Mem. In Opp'n at 5) Indeed, except to the extent otherwise provided in the Articles [of Organization or Dissolution], or a written Operating Agreement, an LLC's managers have **"virtually complete authority over its affairs."** Id. §34.04[2] (*emphasis added*).

The extent to which the two entities are "integrated" or meld as a "single-employer" is best left to the jury in that directing operations as a "managing member" is entirely different from providing mere oversight. In this case, the extent of authority KBRG Holdings actually had over the LLC is unknown since neither party produced a copy of the LLC's Operating Agreement. Perdue apparently was designated as the individual manager for the LLC in charge of "day-to-day

---

[10] The owner of an LLC is called a "member." Robinson, NORTH CAROLINA CORPORATION LAW, §34.03 (2008).

[11] The LLC's Articles of Organization dated May 20, 2002, indicate its election as a "Member-managed LLC: all members by virtue of their status as members shall be managers of this limited liability company." (Pl.'s Exh. 8) Pursuant to N.C.Gen.Stat. §57C-2-01(c):
> (ii) members shall be treated in the same manner as shareholders of a professional corporation, (iii) managers and directors shall be treated in the same manner as directors of a professional corporation, (iv) the persons signing the articles of organization of a limited liability company shall be treated in the same manner as the incorporators of a professional corporation,....

operations."[12] However, taking the evidence in the light most favorable to Plaintiff Miceli, there is record evidence that the entities shared a centralized bank account, employed an overlapping work force - at least for certain human resource functions like accounting / payroll, and also shared office space in Richmond, Virginia. Moreover, in light of the LLC's dissolution, it's reasonable to infer that the LLC was undercapitalized. *See* Statesville Stained Glass, Inc. v. T.E.Lane Constr. & Supply Co., Inc., 430 S.E.2d 437, (N.C.App. 1993) (evidence did not support trial court's finding that parent exercised "excessive control" over subsidiary and chose to dissolve subsidiary to escape liability where corporation's board of directors agreed to dissolution in light of subsidiary's financial condition and assets were subsequently liquidated to help pay off company debts).

The record evidence is as follows:

- Robert H. Tappen, President of KBRG Holdings and "Member / Organizer," is the designated signatory on the Articles of Organization for the LLC;
- The same physical address, 1207 Roseneath Road, Suite 2000, Richmond, VA, 23230, is listed both for KBRG Holdings' business address on the LLC's Articles of Organization, **and as Miceli's employer's address on her W-2 forms.** (Pl.'s Exhs. 8, 10)
- A promissory note Miceli executed in favor of the LLC gives the same KBRG Holdings business address in Richmond, Virginia (Perdue Dep. 42 / Perdue Exh. 4);
- Miceli's paychecks were issued by the Accounting Department in the Richmond, Virginia office in the name of "Keystone Builders" (Perdue Dep. 50-56 / Perdue Exh. 10);

---

[12] Neither Perdue nor Defendants define what is meant by "day-to-day operations," which necessarily depends upon the nature of the business.

- The LLC's payroll matters were handled by people who worked at the KBRG Holdings Richmond, Virginia site (Perdue Dep. 56);
- The signature of Doug Jones, Chief Financial Officer of KBRG Holdings, is on the dissolution paperwork for the LLC;
- Jon Perdue, manager and supervisor during Plaintiff's employment with the LLC, testified that the only business office in Statesville at the relevant time was a model home and sales office where Miceli was assigned to work as a hostess (and allegedly later as a sales person);
- Perdue maintained a relationship with KBRG Holdings that permitted his presence at Miceli's deposition and participation in the litigation months after the LLC was dissolved despite never holding any employment position, management position or any other position in KBRG Holdings (Pl.'s Exhs. 2, 7, 9; Perdue Aff. ¶3; Jones Aff. ¶10);
- Perdue avers that he was not independently aware of the relationship between KBRG Holdings and the LLC until commencement of this litigation and that he "never had any dealings" with KBRG Holdings (Perdue Aff. ¶4);
- Counsel for the LLC has also acted on behalf of KBRG Holdings since its member-manager status was disclosed;
- KBRG Holdings received "member distributions" from the LLC. (Jones Aff. ¶7; Perdue Aff. ¶¶4-8)

KBRG Holdings attempts to explain away each of these facts individually but fails to fill in the "gaps." As a holding company, the function of KBRG Holdings was to "hold" the LLC's stock. <u>KBRG Holdings didn't engage in any manufacturing, marketing, or sales activities independent of the LLC</u>. This fact alone distinguishes the instant case from the majority of those cited by the Defendant KBRG Holdings. Unless the Operating Agreement limited its authority,

15

as a member-manager of the LLC, KBRG Holdings was potentially responsible for all of the LLC's affairs. KBRG Holdings similarly fails to adequately explain the suspect timing of the LLC's dissolution – seventeen days after answering the Amended Complaint – and its failure to disclose the dissolution immediately to defense counsel, Plaintiff Miceli, and the Court. Finally, Miceli's allegation that Defendants intentionally concealed the existence of KBRG Holdings' existence is not lost on this Court as determining whether or not to disregard the corporate form includes a certain element of justice. *See* Thomas, 39 F.3d at 503.

Given these facts and circumstances, the Court finds that the objectives of Title VII would be frustrated by a summary judgment dismissal.

### IV. Order

For the reasons set forth herein, this Court finds that genuine issues of material fact preclude summary judgment disposition.[13] To the extent any of Plaintiff's causes of action are subject to judgment as a matter of law at the close of the evidence, the Court will entertain motions at the appropriate time.

**IT IS THEREFORE ORDERED THAT:**

>   1) Defendant's Motion for Summary Judgment is hereby **DENIED**; and
>   2) Plaintiff Miceli's claims will proceed to trial immediately, or no later than the Court's **November 2010 Statesville term, with Calendar Call on Monday, November 1, 2010 at 10:00 a.m., Jury Selection on Tuesday, November 2, 2010, at 9:30 a.m., and the commencement of trial [opening statements, presentation of Plaintiff's case] to immediately follow.**

---

[13] As for the merits of Miceli's claims, genuine issues of material fact exist regarding the alleged discriminatory motive or intent of the LLC or KBRG Holdings.

Signed: September 1, 2010

Richard L. Voorhees
United States District Judge